The opinion of the court was delivered by
Duncan, J.
On exarfiining this record, it presents nothing more than simply an action of trespass guare' clausum, fregit, with the plea of not guilty, without any exception to the evidence of the record of ejectment between the same parties, for the premises in which the trespass is stated to.have been comjnitted; in which the court was requested to instruct the jury, that in point of law, an action of trespass was not the proper remedy to enable á plaintiff in ejectment to recover mesne profits for the premises recovered in ejectment, which instruction the court refused to give; on (he contrary, instructed them, that this was a proper and appropriate remedy. In this they were unquestionably right. The question was not made on the trial, how far the record of the recovery in ejectment was conclusive evidence of the plaintiffs right to recover for mesne profits, or whether it was incumbent on a plaintiff who recovered in ejectment, to prove an actual entry and trespass in the action for mesne profits. I will not say that the action of trespass is the only form in which such plaintiff can recover under any circumstances, yet I do consider it as one better calculated to do him, *57 complete justice than any other, for it is inconsistent, that an action on an implied contract for the use and occupation could lie, which-the plaintiff, in his ejectment, considered as a wrong; and how the action of ejectment, and for use and occupation, can be Consistent, it is difficult to conceive, since in the one, the plaintiff treats the defendant as a trespasser, and in the other as a tenant. There is nothing in the action of ejectment by writ, under the act of 21st March, 1806, that alters the consequences of a recovery in ejectment from those of the common law. It substitutes the writ for the declaration; the real for the fictitious parties; but the mode of trial, the issue, the verdict, the recovery, the judgment and the writ of possession are the same. When the writ was substituted, it was very early discovered, that this reformation, as it was intended to be by the legislature, would be attended with doubts and difficulties. Some supposed the writ partook of the nature of a writ of right, where one verdict and judgment would be conclusive of the right itself. Difficulties likewise arose, as to how the landlord was to be admitted to defend; as to the mode in which the defendant was to enter his .defence, and the operation of the sheriff’s return as to parties in possession. The succeeding legislature, to remove these doubts, passed the supplement of 13th April, 1S07, in very broad terms, by declaring that the writ of ejectment prescribed by the act of 1806, should give remedy as fully and effectually, as in ejectments in the form heretofore used. It prescribes the issue to be, that of not guilty; provides for landlords being made defendants, and declares that the right is not barred by one verdict in ejectment, though two succeeding ones in favour of the same party, do bar the right; and it makes the sheriff’s return prima facie evidence, that the persons on whom he has served the ejectment are in possession. So that the effect of a judgment in ejectment is precisely the same as at common law, with the exception of the bar of two successive verdicts and judgments. It is a possessory action, and the legislature declare, that the writ of ejectment shall give as full and effectual relief, as in the fictitious form; they are in substance and in effect the same. If any contrary doctrine were held, it would defeat the design of the law, and we should be at sea without chart or compass to guide us, in giving effect to this' new writ, unknown to the common law, and undefined by the first act. It was very wisely ordered by the act of April, 1807, that it should have the same effect as the antecedent form, by declaration. Thus this shapeless writ is reduced to a certain and circumscribed state, whose dimensions and consequences are well ascertained. Thus understood, it operates just as the legislature intended, a substitute of the real names, an abolition of what seemed to the legislature’a senseless and unintelligible jargon, of the fiction of lease, entry and ouster, of the nominal parties, the fable, and the fictitious characters; and the simple writ introduced. Of all the fictions, in the law, it was the most *58 innocent and the most useful, and brought the right of possession to a direct issue on the merits, without the least entanglement of form. So have these laws been construed; in this manner has the .intention of the legislature been effectuated, and there is no difference betweenthe consequences of a judgment in ejectment by-declaration, and one by writ, except where the legislature has expressly declared it. I do not know that the question has ever been made, whether there is any variation as to mesne profits, either in the form of the action, or the effect of the recovery in ejectment on that action. When the action of ejectment remained in its primitive state; while it was strictly a remedy for a lessor, quart ejecit infra terminum, there the value of the land during the time the defendant tortiously held it, was the measure of damages. When the proceeding came to be fictitious, nominal damages only Were given; and this introduced the action of trespass vi et urmis, generally called the action for mesne profits, and it would seem, that even in the fictitious action, the plaintiff may recover his real damages by giving notice of his intention to the defendant. Lessee bf Butler v. Bigelow, 1 Peters Rep. 452. But the usual and safest course is, only to take a verdict for nominal damages, and recover the real damages in the action for the mesne profits, and that has been the unvaried practice, as well before as since the act introducing the writ. When the party proceeded under the common law form, he brought his action either in his own name, or that of his nominal lessee; in his own name when he intended to recover damages, as for a time anterior to the demise. • Where he does not go for damages before the time of the demise, *the recovery in ejectment estops the defendant from denying his title, provided he proceeds only from the time of the ouster, for profits subsequently accrued. If he goes beyond that, he must prove a title beyond it, and possession of the defendant beyond it. The recovery for mesne profits,where the ejectment is under the act, is in direct conformity to this. If he asks not for damages anterior to the service of the writ .of ejectment, the recovery is conclusive, and es-tops the tenant; if he does, he must show his title, and the possession of the defendant.
These appear to the court to be just principles, and the true exposition of the acts of 21st March, 1808, and 13th Jlpril, 1807. One would regret to find, this remedy by ejectment, which is at this day the universal mode of trying possessory titles, involved iii any doubt, by acts which merely intended to change the form, and not the operative effects of a judgment in ejectment, unembarrassed by the difficulties attendant on real actions. It is not changed. It has been justly said of the action of ejectment, that in tracing its remedy through its several gradations, it has been continually moulding itself ito the condition of the times,r extending its uses and powers as the progress of civil society rendered it necessary or convenient.
Judgment affirmed.