# Huston *against* Wickersham.

In an action of trespass to recover mesne profits, after a recovery of the land by ejectment, if the plaintiff give evidence of profits received by the defendant anterior to the time of the issuing of the writ of ejectment, then the verdict and judgment in that action are not conclusive, and the defendant may give evidence to show that the title was then in him.

In such action, the plaintiff may recover more than the rent or yearly value of the land; he may charge all actual damage and injury to the premises.

ERROR to the Common Pleas of *Washington* county.

William Wickersham, trustee of Mary Chess, against Cyrus Huston. This was an action of trespass, in which the plaintiff charged the defendant in his declaration with entering into his land on the 1st of June 1837, and remaining in possession until the 13th of October 1839, and during that time taking the rents and profits. The second count charged the defendant with breaking and entering the same close, and cutting and carrying away timber trees, and digging and carrying away coal. The defendant pleaded not guilty, and, by leave of the court, to the second count pleaded *liberum tenementum.*

The plaintiff gave in evidence the record of a verdict and judgment for the land in an action of ejectment between the same

[Huston v. Wickersham.]

parties, brought to June Term 1837, upon which a *habere facias possessionem* was issued to November Term 1839, and the plaintiff was put in possession. The plaintiff then offered to prove the annual value of the premises. The defendant objected to any testimony as to the value of the premises prior to the date of the trespass as laid in the declaration. The objection was overruled by the court, and the defendant excepted. The proof was then given.

The plaintiff proposed to prove the amount of coal dug from the premises, and sold by defendant during his possession, and also the timber cut and sold. To this testimony defendant objected, but the objection was overruled, and the testimony admitted; to which the defendant excepted. .

The plaintiff then gave in evidence a judgment of Cyrus Huston against A. B. Chess, entered in 1832, for $705.35, execution upon it, and levy and sale of the land in dispute, and deed of the sheriff, dated 22d of October 1832, to Michael Millar. Deed from Michael Millar to the plaintiff, dated the 22d of January 1833.

The defendant gave in evidence, proceedings in Orphans' Court, June Term 1829, on petition of A. B. Chess, in right of his wife, for partition awarded to Chess in right of his wife, recognizance and satisfaction, receipts filed 23d of October 1832, December 1830; also, the judgment of John S. Cloky *v.* A. B. Chess, No. 65, January Term 1835, and proceedings and sale to Huston of this same land, which had been previously sold under his judgment to Millar. Sale 25th of December. Deed acknowledged December Term 1836.

Defendant offered the judgment of William Impson *v.* A. B. Chess, No. 42, November Term 1831, as part of the foundation of his title. Objected to by plaintiff, and rejected by the court. Excepted to by defendant.

Defendant then offered a receipt of Impson to Michael Millar for the amount of his judgment against A. B. Chess. dated 29th of September 1832, and to prove that it was given without any money being paid by Millar, and that by agreement of the parties, the judgment enured to the use of A. B. Chess. Objected to by plaintiff, and overruled by the court, and excepted to.

Defendant then offered a mortgage by Chess and wife to Millar, of the tract of land, dated 24th of October 1832, and satisfaction endorsed on mortgage. Objected to, and overruled, and exception, &c.

The whole case was so imperfectly stated in the paper book, that some facts of seeming importance were not intelligible.

The defendant requested the court to charge the jury upon the following points:

1. That the plaintiff is not entitled to recover any of the profits of the land described in the declaration, whether as crops growing on the land, or cutting of timber, or excavation and carrying

[Huston v. Wickersham.]

away coal, if proved to have been done before the time laid in the declaration.

2. The plaintiffs were bound to make the election before they introduced any evidence of a trespass.

3. The Court is further requested to charge the jury, that the cutting of timber, and digging of coal, and opening coal-mines, and carrying the coal away, is *waste*, and therefore the plaintiffs in this action are not entitled to recover for the same, they having but a life interest in the premises.

4. The court is further requested to charge the jury that, from the title exhibited by plaintiffs, A. B. Chess, the husband of Mary Chess, is entitled to the *usufruct* of the premises in question, and that the amount paid by Huston, as a purchaser of the estate of Chess, under the proceedings in the Cloky judgment, ought in equity to be set off, *pro tanto*, against the profits received by him.

5. The court is requested to charge the jury, that, if the jury believe that the plaintiff received the whole or any part of the last year's crop more than the moiety, they must pass such balance to the credit of defendant.

The court charged on the points of the defendant as follows:

1. We have no doubt the plaintiff is entitled to recover profits prior to the commencement of his ejectment, and subsequent to the time his title accrued; and, although we have great doubts whether he can go back of the time laid in the declaration, yet as we would have permitted the plaintiff to amend his declaration so as to cover the whole time, and so offered, without allowing the defendant a continuance on that account, and we have for that reason admitted evidence of the whole time; we decline charging as requested, and instruct the jury to assess damages for the whole time the defendant was in possession.

2. This point is embraced in the first, and in a bill of exceptions taken by defendant, and we therefore decline charging as requested.

3. The evidence before the court shows that the *cestui que trust* has a fee simple in the premises, and we therefore decline charging as requested.

4. The evidence shows that A. B. Chess's title was entirely extinguished by sheriff's sale to Millar, and his title is now vested in plaintiff. The court therefore refuse to charge as requested.

5. The court charge as requested on this point.

The errors assigned embraced all the exceptions to evidence, and all the points charged upon by the court.

*Alden* and *Dunlop*, for plaintiff in error. The principle seems to be clear that a plaintiff cannot give evidence of a right to recover that which he does not claim by his declaration. 3 *Stark* 1441; 16 *Mass.* 470; 3 *Serg. & Rawle* 206; *Anthon's N. P.* 42; 1 *Chit. Pl.* 384; 2 *Chit. Pl.* 414; 2 *Stark Ev.* 806. The plaintiff's title was but of the life estate of Chess, that being the amount of

[Huston v. Wickersham.]

the estate levied upon the *fieri facias*, sold upon the *venditioni exponas*, and conveyed by the sheriff's deed, and it vests no greater title in the purchaser. 9 *Watts* 492; 10 *Watts* 100; 10 *Serg. & Rawle* 275; 4 *Watts* 237. Although Chess may have had an estate in fee in two-thirds of the land, and a life estate in the other third, yet the parties themselves, by the acts and consent, may give such a construction to the sheriff's deed, as to limit it to that estate which it purports to convey, to wit, a life estate in the whole land. 1 *Whart.* 317; 1 *Watts* 536; 10 *Peters* 200. The plaintiff, then, having but a life-estate, was not entitled to recover damages for waste or injury to the freehold which belonged to the reversioner. 2 *Bac. Abr.* 263; 1 *Inst.* 341 *a*, 53 *b*; *Co. Lit.* 218; 1 *Rawle* 155; 7 *Term Rep.* 13; 1 *Bac. Abr.* 54. The plaintiff having given evidence of profits received by the defendant, prior to the institution of the action of ejectment, the verdict and judgment in that action were not conclusive of the title, and the court therefore erred in rejecting the defendant's evidence of his title. 11 *Serg. & Rawle* 55; 3 *Watts* 449; 6 *Binn.* 455; 2 *Rawle* 49; 6 *Watts* 260; 5 *Watts* 474.

*Marsh, contra,* argued, that the sheriff's sale of the land to the plaintiff, could convey and vest in him no more or less than the estate which was in Chess; it was not in the power of the sheriff to levy or sell less than his whole estate. The plaintiff gave in evidence the record of the recovery in ejectment, and also his title, and he was not therefore confined to the time laid in his declaration, which is wholly immaterial. 2 *Chit. Pl.* 413, 429, 435. The plaintiff, therefore, having the whole title, might claim damages for every kind of injury done to the freehold.

The opinion of the Court was delivered by

Huston, J.—This, in the court below, was an action of trespass for mesne profits from a tract of land which William Wickersham, as trustee of Mary Chess, had recovered in ejectment in the same court.

The statement of the case on our paper book is far from being a lucid exposition of what took place at the trial.

The declaration originally contained two counts: to the last of which defendant pleaded *liberum tenementum.* This count, and of course this plea, was struck out; it does not appear nor was it clearly stated in argument, for what reason.

The plaintiff gave in evidence the record of the recovery in an ejectment of June Term 1837; judgment on verdict for plaintiff, and possession delivered of November Term 1839. The errors assigned are to the first three bills of exceptions to testimony, and all depend on the same point: whether plaintiff in this action can give in evidence every trespass done to the land, and every profit he made from it. I shall not stop to inquire whether, if Huston

[Huston v. Wickersham.]

had been a tenant, the taking coal from an open bank, or the opening a new bank, and taking and selling coal from it, would or would not have amounted to waste or trespass; nor how this would have been if he had been tenant for life; because, after trial of the ejectment he must be considered in this cause as a trespasser who had tortiously entered upon the land of the plaintiff.

It would be an affectation of learning to state at length that in ejectment, at first, only damages were recovered—then the possession. That to clear the ejectment from the perplexity of special pleadings, and to give to plaintiff the possession, which could not have been in simple trespass, certain forms, entirely fictitious, were introduced; a lease was stated to have been made, and a tenant to have entered, and a wrong-doer to have entered on him and forcibly to have dispossessed him; and this fictitious wrong-doer being sued, gave notice to the person in actual possession to appear and defend him. That on the tenant in actual possession appearing in court, he was permitted to manage the defence, on his agreeing to confess that a lease had been made and possession taken, and the tenant had been forcibly ousted; and on his doing this, and pleading not guilty, the party claiming, and the party actually in possession, were to go to trial on the merits; but as all this was on a fiction of a lease for years, the merits were, who had the right to possession; what is tried and decided in one cause, cannot be controverted in another action. The defendant then could never controvert that he had tortiously entered on a man in possession, and ousted him and kept him out. He was, however, only concluded as to the lease stated, and the trespass on the tenant for years, or his lessor, who was generally at the trial, substituted as plaintiff. The right of possession might again be controverted on another lease, stating another date, &c., &c. When this fictitious action was in use, only nominal damages were recovered in the action of ejectment, and this might be followed by an action of trespass for the injury to and profits of the land, while it was held by the defendant in the ejectment. I shall not enter into the question, whether with or without giving notice a plaintiff could recover full damages in the action of ejectment, because the old form is abolished in this state. I may say, however, that some very eminent lawyers and judges did not accede to Judge Washington's opinion, because the confession of lease entry and ouster being a fiction contrived by the court, and compulsory on defendant, intended to get at the right to possession, excluding formal pleadings, could not justly be held obligatory on the defendant *for any other purpose than to try the right of possession*, and because the docket entries and court rules showing that this right alone was to be tried, no other question could be raised before the jury.

The alteration of the forms and process in the action of eject-

[Huston v. Wickersham.]

ment, excited no little alarm with those who could see nothing as right but English forms; since in that country they have now modelled their forms of pleading and practice, we may try to reconcile ourselves to our legislative changes. The question, how the damages were to be recovered, occurred soon after the passage of the Acts of 1806-7.

In *Osbourn* v. *Osbourn*, (11 *Serg. & Rawle* 55, 56, 57), some points were settled: first, that trespass for mesne profits was the proper action under our form of ejectment; but leaving it uncertain whether, when defendant went into possession under a contract with plaintiff, some other form of action might not be adopted.

And, secondly, that form only is changed; the effect of the trial, verdict, and judgment, is the same as before, save that two verdicts and judgments are conclusive; and, as before the judgment in ejectment was conclusive in trespass for mesne profits for all the time laid in the narr., so under our Act it is conclusive from the time of issuing the writ. But if he goes for mesne profits anterior to his writ of ejectment, he must prove defendant to have been in possession, and opens the question of title as to such anterior time, just as it was before, if plaintiff went for *damages anterior to the date of his demise in his declaration.* That the judgment in ejectment is conclusive from the commencement of that suit, was again decided, *Lloyd* v. *Nourse*, (2 *Rawle* 49). It would seem by the first bill of exceptions that the court permitted evidence of defendant taking the profits before the commencement of the ejectment, though the exception is not to that, but to the time stated in the narr. in trespass; and it would appear that the question as to the conclusiveness from the commencement to the end of the ejectment, was not made below, but all was put on the date of the trespass in the narr.; but of this I cannot be certain. The defendant attempted to go into the title, it would seem, for the whole time; this the court rejected; and this forms the ground of the remaining bills of exceptions. Now, from what has been said, if the plaintiff had confined his testimony to the period between the commencement of his ejectment and the execution of his *habere facias possessionem*, this would have been all right; but if the plaintiff had given evidence of acts by defendant anterior to the writ of ejectment, this opened to defendant the right, *as to those acts*, to go into the title.

As to the time laid in the narr. in this suit, I pass it over, because it seems from what the judge says, and the counsel of plaintiff say, there was an offer to amend as to date, and this was not done because defendant said it was not necessary.

As the cause goes back, if plaintiff chooses to go for profits and damages anterior to his ejectment, he will alter the date of the commencement of trespass. If he confines his testimony to the time of the pendency of the ejectment, this will not be necessary, and defendant can show no title for that period.

II. — 40        2 B

[Huston v. Wickersham.]

· That more than the bare rent or yearly value of the premises may be recovered in this action, is well settled. See *Goodtitle* v. *Tombs*, (3 *Wils.* 118, 121); 3 *Yeates* 13. The Statute of Limitations may be pleaded to all beyond six years. 3 *Yeates* 13.

It has been decided that in this action, in a case of an innocent holder of the land, he may be allowed for repairs. 2 *Wash.* 66, 155; 2 *Johns. Cas.* 438; 4 *Cowen* 168. It would seem to follow from this, as well as from principles of justice, that a defendant would be answerable for all actual damage and injury to the premises, as well as all actual profits.

Judgment reversed, and a *venire de novo* awarded.