## Kille *et al.* *versus* Ege *et al.*

1. In an action for mesne profits none of the plaintiffs were originally parties to the action of ejectment, the record of which they gave in evidence, but were added two years after the writ issued; the original plaintiffs had no title and were nonsuited; the new plaintiffs did not derive title from the original plaintiffs, but recovered on their own; there was no privity of interest or title between them, and their names had not been omitted through mistake. *Held*, that although the plaintiffs had been added without objection, yet they thereby acquired no rights relating back of their admission and the action commenced as to them when their names were put on the record.

2. The verdict and judgment in the ejectment are conclusive of the plaintiffs' right to recover the mesne profits only from the time the action of ejectment commenced down to the execution of the habere facias, and where they claimed mesne profits prior to the time of bringing their suit in ejectment, they opened the question of their title and of the possession of defendants for such prior time, and neither the judgment in the ejectment nor any of the proceedings therein estopped the defendants from having their rights again passed upon or the same evidence again submitted to a jury.

3. Defendants in an action for mesne profits had leased premises for a term of fifteen years, at an annual rental of $2000 besides the payment of royalty on each ton of iron ore mined and received the rent for one year, but the premises were in no way injured and no ore was taken therefrom. Defendants, having been evicted by plaintiffs, became unable to fulfil their covenants in the lease and the lessees thereby acquired a right of action against them for damages. *Held*, that the $2000 received by defendants did not establish a correct basis for fixing the just rental value of the premises, and it was error in the court below to instruct the jury that these circumstances did not affect the plaintiffs' right to the rental received by defendants.

4. Where there was a conflict of testimony, the question of fact as to the quantity of land of a certain tract embraced in a lease should have been left to the jury, and it was error in the court to assume that a certain number of acres were contained therein.

5. To show the increased value given to premises by improvements in developing mines a witness was called who knew the premises before and after improvements were made, had large experience in ore and iron business, knew the character of the improvements, the ore banks in question, and was familiar with mining operations in the vicinity. *Held*, that the witness had sufficient knowledge to form an intelligent opinion of the value of the premises before and after development, and other evidence showing some of the improvements to have been of a permanent and valuable character having gone to the jury, the testimony of the witness should have been admitted.

May 12th and 13th 1876.　Before AGNEW, C. J., MERCUR, GORDON and WOODWARD, JJ.　WILLIAMS and PAXSON, JJ., absent. SHARSWOOD, J., did not sit in this case.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1876, No. 101.

This was an action of trespass for mesne profits, brought by Caroline Ege, John W. Ege, Emma K. Ege, Joseph B. Haverstick and Mary C., his wife in her right, S. Kate Ege, George T. Ege, Robert S. Ege and Charles R. Ege, minors, by their guardian, Joseph B. Haverstick, against Charles Wharton and John T. Kille.

The lands of which the mesne profits were claimed were recovered in an action of ejectment, brought on the 7th day of June 1872, by William Cox and others, against Edward Noble and others (see 29 P.

[Kille *v.* Ege.]

F. Smith 15), in which action the parties plaintiff in this suit, the heirs of Elizabeth Ege, deceased, were admitted as plaintiffs, on the 24th of April 1874, and John T. Kille admitted to defend as landlord on the 12th of October 1874. The original plaintiffs were nonsuited and a verdict was found for the new parties plaintiff on the 16th of October 1874, and possession given them on the 26th of same month.

The mesne profits claimed were those derived from the ore mined and carried away from these lands by the defendants and their lessees, and the rents received by Kille under leases.

It appeared that Kille, who claimed to own the lands in 1869, through his agent, Wharton, opened an ore bank thereon, and between November 1869 and October 1870, mined, carried away and sold ore to the value of $6950.55.

That, on the 21st of October 1870, Kille leased to the firm of Ginterman & Robertson a portion of these lands for a term of fifteen years, in which the firm bound themselves to mine a certain quantity of ore, and to pay to Kille 75, and after July 1st 1871, 50 cents per ton royalty thereon, and that, under this lease, from January 1871 to August 1874, Kille received a royalty of $6941.61.

From another lease of a portion to James Lanagan, for a like term, the stipulated royalty being 50 cents per ton, Kille received between the 2d of July 1872 and 30th of September 1874, the sum of $6009.03.

On the 30th of January 1873, he leased to Seyfert, McManus & Co., 75 acres, for a term of fifteen years, at an annual rental of $2000, and 50 cents per ton royalty on every ton of ore mined and carried away in excess of 4000 tons. On this lease Kille received one year's rent, $2000, but it was admitted that no ore was taken from the leased premises.

Plaintiffs gave in evidence the record in the ejectment suit, and then proceeded to show how long the defendants had been in possession and the profits made by them from the lands.

The defendants contended that the action of ejectment did not exist as to the Ege heirs until the time they came upon the record, April 24th 1874, and that if the plaintiffs were permitted to show mesne profits anterior to this time, the defendants might show their title to the land as to such anterior profits. They also contended that plaintiffs had no claim to the rent paid by Seyfert, McManus & Co., and that defendants should be allowed for the improvements made upon the lands.

The questions raised in the case will appear from the following rulings of the court below, upon the admission of evidence, the answers to points and charge to the jury :—

The defendants offered to show by certain conveyances and drafts the location of the lands, and what portion of them claimed in the action of ejectment were embraced in the leases in question, for the purpose of showing title in the defendants in this case to the land

for which mesne profits were sought to be recovered, prior and up to the time the plaintiffs proceeded in ejectment for its recovery, and in answer to their claim for mesne profits prior to said action.

The court said : " The offer proposes to go into the question of title prior to the action of ejectment. Now the record and proceedings, and record of trial in the ejectment, show that the same evidence of title was then introduced by the defendants on the trial and passed upon, and that the title on which the plaintiffs recovered extended far beyond the time within which, in this action, mesne profits are claimed. To admit the evidence would be simply to start upon a re-trial of the same questions as those actually tried and determined in the ejectment, and nothing more. We can discover no good or legitimate purpose in doing this, in the trial for mesne profits.

" That part of the offer which proposes to go into the question of title is therefore rejected. But so much of the offer as proposes to prove that any part of the profits claimed was taken from land not embraced within the limits of the land recovered in ejectment, is admitted."

Defendants excepted, and bill sealed.

Defendants then offered certain deeds of lands, and the considerations paid therefor, for the purpose of showing that defendants were bonâ fide purchasers in possession under title, or color of title, and to be followed by evidence of permanent improvements to the property, of which the plaintiffs seek to recover mesne profits.

The court said : " By reference to the record of the trial in ejectment, it will be found that the same deeds of conveyance were then introduced in evidence and passed upon, and we do not think it will aid us any in this trial to re-try the same questions then raised and passed upon. So far as the offer is to prove color of title, it is rejected, but so far as the offer is to show permanent improvements made by the defendants on the property, it is admitted."

Plaintiffs and defendants excepted, and bills sealed.

E. F. Haskill, a witness on the stand, having stated that he had known the country where the ore banks of Ginterman & Robertson and Lanagan are located since 1838, and that he had been in the iron and ore business since 1856, the defendants proposed to prove by him the value of the land upon which these banks are located, with the knowledge that there was ore in it, but undeveloped, and what the value of it is now, with the improvements for mining ore erected on it, and this for the purpose of showing to what extent the property has been increased in value by the labor and expenditures of the defendants in developing the ore, and the improvements erected, and to show that the plaintiffs have not sustained any damage from the act of the defendants.

Plaintiffs objected, and the court rejected the testimony.

The eighth point of plaintiffs was as follows, with which is given the answer of the court :—

[Kille v. Ege.]

8. In no case are defendants entitled to credit for loose property, and temporary structures put and left on plaintiffs' land by the defendants' lessees, but the improvements, to entitle them to credit, must be of a permanent kind, evidently made for the permanent benefit of the land, and giving a permanent increase of value to it; and it is for the jury to say whether the improvements are, or are not, permanently beneficial to the land, and such as should entitle defendants to credit.

Answer: "This point is answered in the affirmative. The law is correctly stated."

The points presented by defendants and the answers of the court were:—

1. The writ in ejectment to No. 230, August Term 1872, having originally been served in the names of the heirs of William Cox, deceased, who were nonsuited on trial of the case, and a verdict and judgment in the case having been entered in favor of the heirs of Elizabeth Ege, deceased, who did not come upon the record as plaintiffs until April 24th 1874, the action did not exist as to them until that date.

Answer: "In a general sense this proposition is correct, but it must be understood that the moment the heirs of Elizabeth Ege came upon the record as plaintiffs, they became engrafted upon the action as such, and all the legal consequences of the action attached to them the same as if they had been of the original plaintiffs."

2. To entitle the plaintiffs to recover in this action the mesne profits for the time anterior to the existence of the action of eject-ment, they must show their title and the possession of the defendants.

Answer: "This point is answered in the affirmative, and we think the plaintiffs have done this. They have shown the possession of the defendants and their lessees from the fall of 1869, and have also shown their own title by the record and proceedings in eject-ment. The verdict and judgment in their favor show the recovery of the title by the plaintiffs, and the charge of the court below and the assignments of error in the Supreme Court in affirming the judg-ment show unmistakably the character and extent of the title set up by the defendants in that trial to defeat the plaintiffs' recovery."

3. The verdict and judgment in the ejectment are conclusive against the defendants only from the date of the action to the time when the plaintiffs were put in possession of the property and the evidence or notes of trial as kept by the court in that case cannot be resorted to, for the purpose of seeing what title the plaintiffs recovered on, or to show title in them before the action was in exist-ence as to them.

Answer: "This point is affirmed generally. But where, as in this case, the record and proceedings in the ejectment show unmis-takably the same continuous title in the plaintiffs down to the ver-dict and judgment from a time anterior to that for which mesne

[Kille *v.* Ege.]

profits are claimed, although claimed anterior to the service of the writ of ejectment, the defendants will not be permitted on the trial of the action for mesne profits to set up in defence the same title as that defeated in the ejectment. On the trial of a subsequent action of ejectment it would be different. By the record and proceedings in ejectment we take in not only the verdict and judgment, but also the charge of the court below, the assignments of error passed upon by the Supreme Court and the opinion of the Supreme Court, all of which we think should be taken notice of in the action."

4. The action of ejectment having had no existence as to the plaintiffs prior to 24th April 1874, and they having been put in possession of the property on 26th October 1874, and having shown no title in themselves prior to 24th April 1874, they can only recover in this action the profits received by the defendants from April 24th 1874 to October 26th 1874.

Answer: "Refused. We have already instructed you as to this."

6. The lease to Seyfert, McManus & Co., providing for a rental of $2000 per annum, with the privilege of taking out ore therefrom in years succeeding that in which the rent may be paid, and it being admitted that none has been taken, and if the lease to them is on the Cox land, the recovery by the plaintiffs in the ejectment evicted Seyfert, McManus & Co., and made Mr. Kille liable to refund the $2000 they paid to him, and the plaintiffs cannot therefore hold him, in this action, responsible for the amount he received from Seyfert, McManus & Co.

Answer: "We cannot answer this point as requested. It is true that the recovery by the plaintiffs, in the ejectment, operated as an eviction of the tenants, as between them and Kille, but whether or not Kille is liable or may ever be called upon to respond in damages to Seyfert, McManus & Co., does not affect the plaintiffs' rights to the rental received by Kille from that part of the plaintiffs' lands covered by the lease to Seyfert, McManus & Co."

8. The value of the permanent improvements put upon the ground in the form of machinery, buildings, and conveniences for the mining of ore, may be set off against the value of the ore in place before it was mined; and if the jury believe that the value of those improvements—machinery, buildings and conveniences—equalled or exceeded the value of the ore in place, then their verdict should be for the defendants.

Answer: "This point is answered in the affirmative, with this qualification, however, that no improvements can be allowed for save such only as were put upon the ground prior to the —— of June 1872, and which the jury are satisfied are of a beneficial, useful and permanent character. Improvements made and put upon the ground after the —— of June 1872 are not proper subjects of compensation as a set-off to the value of the ore in place, yet in so far as such improvements

[Kille v. Ege.]

were used in carrying on and conducting the mining operations, the cost and expense of making and putting them on the ground should be taken into account by the jury in ascertaining the value *in place* of the ore mined and carried away."

In the general charge, the court, Herman, P. J., said:—

"From the conflict of the testimony, we cannot instruct you peremptorily which is the true eastern boundary of the Louis Foulke tract, and therefore submit the matter to you, who are the proper persons to determine the fact.

["If you determine that the *red marked line* is the true eastern boundary of the Louis Foulke, then the Cox must come up to it; and this would put fifty-two acres of the Seyfert, McManus & Co. lease on the Cox. But if you determine that the true eastern boundary of the Louis Foulke is the line as located by Evans, eighty perches eastward from the *red marked line*, then but two and a half acres of the Seyfert, McManus & Co. lease would be on the Cox. Thus, upon your determination of the true eastern boundary of the Louis Foulke will depend the proportion of the rents and profits of the Seyfert, McManus & Co. lease which the plaintiffs will be entitled to recover for."]

And again:—

["The evidence shows that the defendants and their lessees made improvements on the premises both before and after the time of bringing the action of ejectment. Whatever improvements of a permanent and valuable character the defendants or their lessees made and put upon the premises prior to the time of bringing the action of ejectment, are proper and legitimate subjects of compensation to the defendants; and their value to the plaintiffs, estimated in dollars and cents, must be recouped from and set off against the plaintiffs' claim for mesne profits in this action."]

The verdict was for the plaintiffs, for $12,933.40.

Defendants sued out this writ, and the errors assigned were 1, 2, 3, 4, 5, 6, the answers of the court to the points submitted by the defendant.

7. The court's answer to plaintiffs' 8th point.

8, 9. To the portions of the charge in brackets.

10, 11, 13. The rejection of the offers of evidence on the part of defendants.

*Lemuel Todd* and *John Hays*, for plaintiffs in error.—The action of ejectment was brought by the Cox heirs and decided against them, and that action was not therefore such notice as to debar Kille from setting off his improvements against a later claimant. Kille had no notice of the Ege heirs' claim until April 24th 1874, and the action did not exist as to them until that date. In an action for mesne profits, the record of the judgment in ejectment is conclusive that defendants were in possession at time

ejectment was brought, and also as to the title during the time laid in the demise, but not evidence of the length of time defendants were in possession : Bailey *v.* Fairplay, 6 Binn. 450. If plaintiffs ask for damages anterior to the service of the writ in ejectment they must show their title and the possession of defendants : Osbourn *v.* Osbourn, 11 S. & R. 58 ; Huston *v.* Wickersham, 2 W. & S. 313 ; Postens *v.* Postens, 3 Id. 183 ; Drexel *v.* Man, 2 Barr 271 ; Sopp *v.* Winpenny, 18 P. F. Smith 80. The action of ejectment is conclusive only from the time it is brought down to the execution of the habere, and the judgment therein is not evidence of any matter which came collaterally in question : Duchess of Kingston's Case, 11 Harg. State Trials 261 ; Hibshman *v.* Dulleban, 4 Watts 191 ; Lentz *v.* Wallace, 5 Harris 414 ; Lamb *v.* Millar, 6 Id. 450 ; Martin *v.* Gernandt, 7 Id. 127 ; Ihmsen *v.* Ormsby, 8 Casey 201 ; Tams *v.* Lewis, 6 Wright 410 ; Lewis & Nelson's Appeal, 17 P. F. Smith 165. The record of an action, founded on common law, consists of the writ, declaration, pleas and judgment : Erb *v.* Scott, 2 Harris 20. The record remitted from the Supreme Court simply shows the affirmance of the judgment in the court below. The bills of exception only become part of the record in the Supreme Court for purposes of review. Neither the opinion of the Supreme Court nor the assignments of error are returned as part of the record, and yet the court below say, from these plaintiffs have shown title anterior to the bringing of ejectment, and that these matters should be taken notice of in this action. Seyfert, McManus & Co. paid $2000 rent, but no ore was taken out by them ; clearly Kille will have to repay this rent and recovery of it by the plaintiffs will subject him to pay it twice. Its reception by Kille did not injure plaintiffs. What are permanent improvements is a question of law for the court and not a question of fact for the jury, and the court should have said that the "machinery, buildings and conveniences for mining ore" were fixtures, and instructed the jury to allow defendants a set-off for their value : Christian *v.* Dripps, 4 Casey 271 ; Harlan *v.* Harlan, 8 Harris 306 ; Roberts *v.* Dauphin Deposit Bank, 7 Id. 71 ; Ewalt *v.* Gray, 6 Watts 427 ; Morrison *v.* Robinson, 7 Casey 459 ; Walker *v.* Humbelt, 5 P. F. Smith 408. It should have been left to the jury to ascertain the quantity of land of the Cox tract embraced in the Seyfert, McManus & Co. lease. Defendants should have been permitted to show by witnesses who were familiar with the land, the premises, their value and the improvements ; what was the value of the land when known to have ore on it, but not developed, and its value after the erection of improvements, to show plaintiffs had sustained no damage.

*S. Hepburn, Jr.,* and *S. Hepburn,* for defendants in error.—

[Kille v. Ege.]

The amendment of the record in the ejectment suit by adding the names of the Ege heirs after defendants in that suit had given notice in their abstract of title upon which they would defend, that the Eges and not the Coxes were the owners of the land in dispute, was certainly proper: Alden v. Grove, 6 Harris 385; Kaul v. Lawrence, 23 P. F. Smith 416. The amendment would not have deprived defendants of any valuable right; they did not complain that it would work them any injury, and failing to do this or object to the amendment in the proper action, it is too late in a collateral suit to remedy the omission, and deprive the other party of a right incident to and inseparable from his recovery: Hill v. Meyers, 10 Wright 21; Beatty's Adm'rs v. Burne's Adm'rs, 8 Cranch 108. The action tried did exist from its date. The same defendants upon whom the writ was served remained and knew as well of the action before Kille came upon the record as afterwards, and it was they, not he, who improved after the writ of ejectment was served, and the additional plaintiffs were added with their knowledge and without objection. Plaintiffs do not contend that the record in the ejectment is conclusive of plaintiffs' right to recover mesne profits or of their title for a longer period than from the date of the writ until the date of the habere facias, but they do hold that in an action for mesne profits, if the record and proceedings of the trial of the ejectment be offered in evidence, and they conclusively show that the title of the plaintiffs and defendants were distinctly put in issue and adjudicated, for a period long anterior to the date of the writ, then the defendants are concluded from contesting that title, and the plaintiffs will be deemed to have proved their title, for the period determined by the ejectment, without other evidence. The charge of the court below when reduced to writing and filed by request, and the notes of testimony so far as necessary to explain the charge, are parts of the record: Northumberland County Bank v. Eyer, 8 P. F. Smith 97–102; Downing v. Baldwin, 1 S. & R. 298; Munderbach v. Lutz, 14 Id. 125. The rent received by Kille from the Seyfert, McManus & Co. lease, was money received as profits from plaintiffs' lands, was not his, and was certainly as fair an estimate of what profits should be paid plaintiffs as could be found. Its payment should not be delayed to abide the result of another trial between other parties which may never be brought: Breading v. Blocher, 5 Casey 349; Ranck v. Becker, 13 S. & R. 43. The improvements for which credit is allowed must be permanent and beneficial: Jackson v. Loomis, 4 Cowan 168; and their character as well as value are questions of fact for the jury: Worthington v. Young, 8 Ohio 403. The evidence offered in the 13th assignment of error was simply an opinion, not a fact, and the value of an undeveloped ore bank that no human eye ever saw certainly cannot be proved as a fact from which a jury are to fix actual damages.

[Kille *v.* Ege.]

Mr. Justice MERCUR delivered the opinion of the court, October 9th 1876.

While due effect should be given to the statutes authorizing amendments, yet care must be taken that they be not so used as to pervert their true spirit. None of the defendants in error were originally parties to the action of ejectment, the record of which they gave in evidence. They were substituted some two years after the writ issued. The original plaintiffs had no title and were nonsuited. The defendants in error did not derive title from them, but recovered on their own title solely. It was in nowise connected with the original plaintiffs. The so-called amendment was not the addition of names omitted through mistake, nor of parties holding any joint interest with the original plaintiffs. There was no privity of title or interest between them. They were strangers to each other's claim. The substitution was not authorized by the statute. That question, however, is not now before us on bill of exceptions. The substitution having been made, and the record being given in evidence in a subsequent suit, we may declare its effect.

Amendments depriving the opposite party of any valuable right shall not be allowed; hence, when the name of a person was added as plaintiff in ejectment after suit brought, it was held that, if at the time of the amendment the title of the new party was barred by the Statute of Limitations, he could not recover: Trego *et al. v.* Lewis, 8 P. F. Smith 463; Kaul *et al. v.* Lawrence *et al.*, 23 Id. 410. It follows therefore that, although the defendants in error were substituted without objection, yet they thereby acquired no rights relating back of their substitution. As to them, the action commenced when their names were put on the record. The first assignment is sustained.

The 2d, 3d, 4th, 10th and 11th assignments will be considered together. The action of ejectment was a legal averment of the right of the plaintiffs therein to the possession of the land. By their recovery that right was established. In this subsequent action for mesne profits, the verdict and judgment are conclusive of their right to recover damages from the time their action commenced down to the execution of the *habere facias possessionem:* Drexel *v.* Man, 2 Barr 271. But when they sought to recover for damages or profits prior to their action, the verdict and judgment were not conclusive as to such prior time. They were then required to prove their title; for the record only showed that they recovered the term mentioned, from their substitution: Hare *v.* Fury, 3 Yeates 14; Bailey *et al. v.* Fairplay, 6 Binn. 450; Osbourn *v.* Osbourn, 11 S. & R. 58; Huston *v.* Wickersham, 2 W. & S. 308; Postens *v.* Postens, 3 Id. 183; Drexel *v.* Man, *supra;* Sopp *v.* Winpenny, 18 P. F. Smith 80.

The evidence in the action of ejectment by which the right of possession was sustained, must not be confounded with the right itself. The direct issue in the case was their right to possession at

[Kille v. Ege.]

the time they came on the record. That issue having been found in favor of the plaintiffs therein, cannot be questioned in the present case. But it is well settled that the estoppel of a judgment extends only to the question directly involved in the issue and not to any incidental or collateral matter, though it may have arisen or been passed upon. The Duchess of Kingston's Case, 11 Harg. State Trials 261; Moulton v. Libbey, 15 N. H. 480; Campbell v. Consalus 25 N. Y. 613; Hibshman v. Dulleban, 4 Watts 183; Lentz v. Wallace, 5 Harris 412; Martin v. Gernandt, 7 Id. 124; Lewis and Nelson's Appeal, 17 P. F. Smith 153.

It is urged that the charge of the court below, in the action of ejectment affirmed here, is a part of the record, and that it and the other proceedings in that case show the same title now set up by the plaintiffs in error was there adjudged to be invalid.

It is true the charge of the court and the evidence may be made a part of the record for the purpose of reviewing the correctness of the rulings in the particular case: Northumberland Bank v. Eyer, 8 P. F. Smith 97; but at common law they are no part of the record: Erb v. Scott, 2 Harris 20; Hageman et al. v. Salisberry, 24 P. F. Smith 280. They are preliminary or incidental to the main issue concluded by the verdict and judgment. For the purpose of enforcing the particular judgment they may be deemed a part of the record: Hageman v. Salisberry, supra. Their conclusive effect in a collateral suit is another question.

It was held in Packet Co. v. Sickles, 5 Wall. 592, and in Coleman's Appeal, 12 P. F. Smith 252, that the plea of judgment recovered may be sustained by a mixed matter of record and of fact. But when extrinsic evidence is given for that purpose, it must be consistent with the record, and unless it be shown that the verdict and judgment necessarily involved its consideration, it will not be conclusive.

Thus far we have considered the effect to be given to a judgment in those cases where one judgment is conclusive. The verdict and judgment in this ejectment did not necessarily involve the title nor the possession prior to the commencement of the action. They were conclusive for the recovery of mesne profits only, and for that purpose only from the time of the commencement of the suit.

In a second action of ejectment between the same parties, the verdict and judgment would not be conclusive. Every fact and conclusion found in the first suit might be controverted in the second. Hence when, in this action, the defendants in error claimed for mesne profits prior to bringing their suit in ejectment, they opened the question of their title and of the possession of the opposite party for such prior time, as fully as it would have been by a second action of ejectment. Neither the prior judgment in ejectment nor any of the proceedings therein estopped the plaintiffs in error from having their rights again passed upon, nor from having the same evidence

considered by another jury. The assignments are therefore sub-
stantially sustained.

The fifth assignment relates to the plaintiffs in error being charged
in this action with the money which they had received from Seyfert,
McManus & Co.

In an action for mesne profits the plaintiff may recover for the
fair rent or yearly value of the premises, and for injury done thereto :
Huston *v.* Wickersham, *supra*. Compensation is the proper mea-
sure of damages : Morrison *v.* Robinson, 7 Casey 456. The action
is equitable in its character : Zimmerman *v.* Eshbach, 3 Harris
417. Hence a bonâ fide occupant under claim of title who has made
permanent and valuable improvements, may show them to be a full
compensation for the use of the premises : Morrison *v.* Robinson,
*supra*. The fact that the plaintiffs in error had let the premises for
a term of fifteen years at an annual rental of $2000, besides the
payment of royalty on each ton of iron ore mined, and received the
rent for one year, did not necessarily give the defendant in error
the right to recover that sum. It appears that no ore was mined
by the lessees during the time for which the plaintiffs in error are
liable for mesne profits. By their eviction they became unable to
fulfil their covenants in the lease. Their lessees acquired a right
of action against them for damages which may equal or exceed the
whole sum they have received. Then if the premises were in nowise
injured by the lessees, and they took no ore therefrom, we cannot
see that the $2000 received by the plaintiffs in error establishes a
correct basis for fixing the just rental value of the premises. The
receipt thereof under the circumstances establishes no just compen-
sation for the rights withheld, nor for injuries sustained. The
point covered by this assignment should have been affirmed.

We are not furnished with the draft showing the " red marked
line " referred to in the eighth assignment. We understand it is
also called the " Pine Grove line." John Evans testifies : " taking it
for granted that the line marked with red marks is the western
boundary of the Cox tract, there would only be about twenty acres of
the Seyfert and McManus lease on the Cox tract." David Peelor
testifies, " taking it for granted that the Pine Grove line is the wes-
tern boundary of the Cox tract, there would only be about twenty
or twenty-five acres of the Seyfert & McManus lease on the Cox
lands." Both of these witnesses were surveyors and had surveyed
the lands in controversy. The number of acres was for the jury to
find, and the learned judge erred in inadvertently assuming fifty-
two acres to be the correct quantity.

The evidence covered by the thirteenth assignment was offered
for the purpose of showing substantially the increased value given
to the premises by the improvements and expenditures made by the
plaintiffs in error in developing the mines. The witness knew the
premises both before and after those improvements were made. He

[Kille *v.* Ege.]

had had large experience in the ore and iron business. He knew the character of those improvements. He knew the ore banks in question, and was familiar with mining operations in that vicinity. He therefore had sufficient knowledge to form an intelligent opinion of the value of the premises both before and after their development. Those two valuations being ascertained certainly threw some light on the value of the improvements. Other testimony had shown some of the improvements to be of such a permanent and valuable character as to make them the proper subject of consideration by the jury. Morrison *v.* Robinson *et al., supra.* We do not think the mode of proof was so objectionable as to justify the exclusion of the testimony.

In so far as the other assignments are not covered by what we have already said, they are not sustained.

Judgment reversed, and a *venire facias de novo* awarded.