# Carman *versus* Beam, to use, &c.

1. Where the plaintiff in an action of ejectment had acquired the legal title and was in actual possession of the premises before trial, he had nevertheless the right to recover the mesne profits for the previous unlawful possession; but to justify a recovery it was necessary for him to establish his right to the possession at the time the suit was brought, as fully as if he were prosecuting his action of ejectment for the sole purpose of obtaining possession.

2. In an action for mesne profits the plaintiff cannot recover the amount of a mortgage which was placed on the property subsequent to the time when the plaintiff showed title to be in himself; to permit a recovery of any part of the mortgage would be to introduce an entirely new element of damages in an action for mesne profits.

January 13th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county :*  Of January Term 1878, No. 124.

Ejectment by Jacob S. Beam, to the use of Samuel S. Kelly, against Charles C. Carman, for a house and lot in the city of Philadelphia.    Defendants pleaded "Not guilty."    Before the trial the equitable plaintiff obtained possession of the premises as hereinafter stated, and then gave defendant notice of his claim for mesne profits.

It appeared at the trial that Beam and Carman entered into an agreement in writing, dated September 18th 1867, wherein Beam agreed to furnish all the materials, and to glaze and paint thirty-two houses, then being erected by Carman, and that in payment therefor he was to receive $12,500, to be paid $5000 in cash as the work progressed, and $7500 in real estate, consisting of two of the houses on which the work was to be done, and of which the house in suit was one.    This latter Beam agreed in writing to sell to Kelly for $8000, $4000 in cash, and subject to a mortgage debt for a like amount.    On February 14th 1868, at the request of

Beam and Kelly, Carman executed a deed in escrow to Beam, and the latter one to Kelly, and both were left with a conveyancer with instructions to deliver the deed to Beam on Carman's order whenever the work on his contract warranted it, and at the same time to deliver Beam's deed to Kelly. On the same day Beam, Carman, and one Wilbur, gave to Kelly a bond of indemnity against liens, which also contained a condition that the houses should be finished by June 1868. Kelly advanced to Beam the full amount of the purchase-money. The houses not being completed at the time named, on the 9th of September 1868, Beam, with the assent of Kelly and Carman, assigned his interest in the contract to Wilbur, part of the consideration being that Wilbur should give Kelly a mortgage for $4000 on other premises, and then Kelly was to assign his interest in the house to Wilbur. The latter failed to give the mortgage to Kelly, and in April 1873, Kelly brought this action of ejectment.

In the meantime Mr. Wilbur had gone on and finished the painting contract, and claimed this house from Carman, and Carman, on the 21st of August 1873, at the request of Wilbur, made a deed to S. S. Pearson for the premises in question. Before doing so, however, he took from Pearson a bond to indemnify him against any loss by reason of this ejectment suit which was then pending. He also gave to Wilbur, a second mortgage for $2500, which was then on the house unsatisfied, but which Carman had paid off. The original $4000 mortgage on the premises, in the meantime, had been reduced to $3500. This conveyance to Wilbur, and assignment of mortgage, were in full of all claims and demands which he had against Carman. On the 15th April 1876, S. S. Pearson, who then held the title for Wilbur, conveyed the premises in question to S. S. Kelly, the plaintiff, subject to the two mortgages, one for $3500 and one for $2500.

The plaintiff then gave notice, " that on the trial a claim would be made for the mesne profits of the premises described in the writ, and also for the amount of $2500, secured by the defendant by virtue of a mortgage secured on the premises while he was the mere custodian of the title."

The defendant, among others, presented the following points, all of which the court, Hare, P. J. refused:—

5. That if Beam, after the execution of the deed in escrow, with the knowledge and consent of Kelly, assigned all his interest in the contract with Carman, and all money due and to become due thereon, to Horace P. Wilbur, whom defendant accepted to do the work, then Carman became liable under the contract to said Wilbur instead of to Beam, and the plaintiff cannot recover.

6. That Carman was liable to Kelly only through his contract with Beam, and that as Beam, with the consent of Kelly, by the writing endorsed on the contract dated September 9th 1868,

[Carman v. Beam.]

released Carman from every claim and demand for or by reason of the said contract, then the plaintiff cannot recover.

8. That even though Wilbur subsequently failed to keep a portion of said agreement with Kelly, yet Kelly having accepted said agreement and released Carman, there was a sufficient consideration for the release to Carman, and plaintiff cannot recover.

12. That as the plaintiff took the title to the premises in question, expressly under and subject to the mortgage for $2500, he is thereby estopped from making any claim for the amount of the said mortgage.

The court, inter alia, charged:

"For the purposes of this particular house and the rights of Mr. Kelly, the agreement of February 1868, and the making of these deeds, and delivery of them to Yardley, changed the order of payment entirely from what it was in the contract originally between Mr. Beam and Mr. Carman, and gave Mr. Kelly the right to have the first $4000 worth of work applied to his benefit by securing to him the title to this house.

"Now, the first question of fact which you have to consider, and it is the turning point of the whole case, is whether or not Mr. Beam did $4000 worth of work upon this contract. If the $4000 worth of work was done then Mr. Kelly has the right to recover. He had the right to have the first $4000 worth of work done applied to his benefit to give him title. * * * The plaintiff's case was, that he was to have had the property in 1868, subject to a $4000 mortgage, and in point of fact he did not get it until 1876, and when he did get it, it was subject to mortgages of $6000. For this difference, and including the profits the defendant had made out of the property in the meantime, your verdict should be for the plaintiff, if you so find."

Verdict for plaintiff for $3500, and after judgment thereon, defendant took this writ and inter alia, assigned for error the answers to the above points, and the portions of the charge noted.

*Thomas J. Diehl* and *J. C. Ferguson*, for plaintiff in error.— The instruction was given to the jury without regard to the time when the possession of Carman became unlawful; mesne profits can only be recovered against an unlawful withholding of the possession: Heckart v. Zerbe, 6 Watts 260; Zimmerman v. Eshbach, 3 Harris 419. Where a person takes the title to a property expressly under and subject to an encumbrance, he thereby assumes the payment of that encumbrance. For the purposes of this case, Pearson, who was the defendant's grantee, and who conveyed the title to the plaintiff, was considered as the defendant; and when he conveyed to the plaintiff the title to the premises in question, expressly under and subject to this mortgage, and the defendant so accepted to it, he certainly was estopped in an action for mesne

[Carman *v.* Beam.]

profits, from claiming from the defendant the amount.of this mortgage : Campbell *v.* Shrum, 3 Watts 60 ; Blank *v.* Gorman, 5 W. & S. 36 ; Hoff's Appeal, 12 Harris 200 ; Woodward's Appeal, 2 Wright 322.

*David W. Sellers,* for defendant in error.—By the agreement of 1868, Kelly was to have a new house. The deprivation of possession from September 1868 to 1876, was attended by deterioration, while in the occupation of defendant and those claiming under him. To determine the measure of damages in mesne profits, the necessary expenditure to put it "in ordinary tenantable condition," when possession was received, was certainly allowable : Huston *v.* Wickersham, 2 W. & S. 308 ; Kille *v.* Ege, 1 Norris 112. When plaintiff received the house, it was encumbered with an additional mortgage of $2500, and it was certainly damaged to that amount, and the plaintiff was entitled to recover it.

Mr. Justice STERRETT delivered the opinion of the court, February 3d 1879.

The issue, first formed by the pleading, was solely as to the right of the plaintiff below to the possession of the premises described in the writ. Before the trial he obtained possession by virtue of the deed from Pearson, to whom the defendant had conveyed after suit was brought. He then gave notice " that on the trial a claim would be made for mesne profits, and also for the amount of $2500, secured by the defendant by virtue of a mortgage on the premises, while he was the mere custodian of the title."

However it may be elsewhere, in this state it has been decided that in our statutory action of ejectment, mesne profits may be recovered by giving notice of the claim when suit is brought, or afterwards, within a reasonable time before trial : Dawson *v.* McGill, 4 Whart. 230 ; Cook *v.* Nicholas, 2 W. & S. 27. Notwithstanding the plaintiff had acquired the legal title and was in actual possession of the premises before trial, he had the right to claim mesne profits for the previous unlawful detention of the possession ; but to justify a recovery, it was necessary for him to establish his right to the possession at the time suit was brought in 1873, as fully as if he were prosecuting his action of ejectment for the sole purpose of obtaining possession. Accordingly, he undertook to do this by giving in evidence the original contract with Carman and the subsequent agreement and transactions by which it was modified. The main question of fact raised by the testimony was whether a sufficient amount of work had been done under the contract to entitle Beam to the deed which had been left in escrow with Yardley. The right of the plaintiff to recover hinged upon this question. The learned judge, after calling attention to the original and subsequent agreements and the testimony as to what had taken place between

[Carman *v.* Beam.]

the parties, instructed the jury, in substance, that the first question of fact for their consideration, and the turning point of the case, was whether the necessary amount of work had been done by Beam under the contract. The view taken by the court of the contract and subsequent agreement of the parties was substantially correct. The questions raised by the testimony were fairly submitted to the jury with full and appropriate instructions; and the verdict established the fact that the necessary amount of work had been done as claimed by the plaintiff; that he was entitled to the deed, and consequently to the possession of the premises in controversy. We discover no error in the rulings of the court, touching the right of the plaintiff to recover mesne profits.

We think, however, there was error in the instructions as to the measure of damages, especially in regard to the $2500 mortgage. The plaintiff, after bringing suit, accepted the conveyance from Pearson, expressly subject to both mortgages, amounting to $6000. In addition to this he agreed to pay one-half the delinquent taxes and three months' interest on the mortgages, $269.79. This was a voluntary act on his part, and he had no right, in the present form of action, to call upon Carman to make good the difference between $4000 and the amount of the encumbrances subject to which he took the legal title. It would be introducing an entirely new element of damages in an action or claim for mesne profits to permit a recovery of any part of the mortgage in question. There is nothing in the circumstances of the case to justify a departure from the general rule which sanctions a recovery for the rent or fair annual value of the premises, and for injury, if any, done thereto. A claim for mesne profits, in an action of ejectment, is governed by the same general rules that are applicable to ordinary actions of trespass. When a plaintiff has recovered his possession, by ejectment or otherwise, that possession by operation of law relates back to the time when he was excluded, and hence all acts done on the premises, by those who have kept him out, are to be regarded as ordinary intrusions on his possession.

There is nothing in any of the assignments of error that appears to require further notice.

Judgment reversed, and a *venire de novo* awarded.