# The Pittsburgh, Cincinnati and St. Louis Railway Company *versus* Fierst.

1. A railroad property and franchises were bought at judicial sale by H. and others, who subsequently, under the provisions of the Act of April 8th 1861, organized a railway company : *Held*, that the company was not liable for the operation of the road, during the time intervening between the purchase and the organization of the company, unless the possession of the company was affirmatively shown.

2. The presumption was that H. and not the company was in possession of the road between the date of the sale and the time of filing the certificate of organization.

November 8th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county* : Of October and November Term 1880, No. 238.

[Pitts., Cin. and St. Louis Railway Co. v. Fierst.]

Case by William Fierst against the Pittsburgh, Cincinnati & St. Louis Railway Company to recover damages for injuries alleged to have been caused by defendant company.

In December 1867 Fierst was in the employ of the National Coal & Coke Company as a brakesman on their coal cars. His duty called him to serve on the train running between his employer's works, a few miles west of Pittsburgh on the line of the Pittsburgh & Steubenville Railroad and Pittsburgh. On December 21st, while engaged in his regular duties, he was injured in a collision between the train he was on and one of the freight trains of the Western Transportation Company, which was then operating the said railroad as lessees. There was no question made on the trial as to negligence, the simple question being as to whether or not the defendant company was liable in any event.

Section 1 of the Act of April 8th 1861, Purd. Dig. 290, pl. 49, provides: "Whenever any railroad, canal, turnpike, bridge or plank-road corporation, created by or under any law of this state shall be sold and conveyed under and by virtue of any process or decree of any court of this state, the person or persons for or on whose account such railroad, canal, turnpike or plank-road may be purchased, shall be and they are hereby constituted a body politic and corporate, and shall be vested with all the right, title, interests, property, possession, claim and demand in law or equity, of, in and to such railroad, canal, turnpike, bridge or plank-road, with its appurtenances, and with all the rights, powers, immunities, privileges and franchises of the corporation as whose the same may have been sold." The act further directs that the persons for whom the same was purchased shall, within thirty days thereafter, "meet and organize said new corporation," first giving two weeks' public notice of said meeting.

At the trial before Bailey, A. L. J., it appeared that the defendant company was formed by the consolidation of three companies, of which the Pan Handle Company was one, and that the articles of association contained the recital "the said railroad companies, parties hereto, owning and operating these several roads." It appeared that said railroad was sold at judicial sale on November 6th 1867 to W. J. Howard and others, who received a deed therefor December 7th 1867, and that the purchasers, as required by the above Act of 1861, met to organize on December 28th 1867, and filed a certificate of incorporation as the Pan Handle Railway Company on January 15th 1868. The plaintiff testified that the Pan Handle Company furnished the locomotives to draw the coal cars on which he was injured, and one Brown, the conductor of the train, testified that he was in the employ of what was called the Pan Handle Railway Company. The defendants gave evidence to show that the Western Transportation Company, under its charter, had leased and was operating the railroad at the date of

15 NORRIS—10

the sale to Howard, and one Card, superintendent of said Western Transportation Company, testified that the latter company was in possession of the railroad until the formation of the defendant company.

The verdict was for plaintiff for $3250, and after judgment defendant took this writ, and made the following assignments of error:

1. The court below erred in declining to affirm the point submitted by the defendant below, which was as follows, viz.: That under all the evidence in this case the plaintiff is not entitled to recover.

2. The court erred in that portion of its charge which is in the words following viz.: "I instruct you for the purposes of this case, that after the sale of the franchises of the road to McElrath, and afterwards to W. J. Howard, under which the Pan Handle Railway was organized, the presumption is the Pan Handle Railway Company was in possession of the road and its operation at the time of this accident."

3. The court erred in submitting, as a question of fact to the jury, whether the Pan Handle Railway Company was in possession of the road at the time of plaintiff's injury, when there was no evidence of such possession.

*Hampton & Dalzell*, for plaintiff in error.—From the uncontradicted testimony on the part of both plaintiff and defendants, the Pan Handle Railway Company did not, in fact, injure the plaintiff. It further appears, by uncontradicted testimony, that the Western Transportation Company was operating the road under lease from the Pittsburgh & Steubenville Railroad, and that its possession was never interfered with until the defendant company's organization, some six months after the accident. How, then, could the Pan Handle Railway Company, which appears to have been simply a paper company, be liable to plaintiff? The effect of the charge of the court seems to be that from the judicial sale a presumption arose that the purchaser went into possession of the property bought, but there is no presumption that the occupant went out. If the case for the plaintiff is to stand it must be upon the theory of his counsel, that the existence of the Pan Handle Railway Company relates back, by operation of law, to the acquisition of title by W. J. Howard. But concede that it does, does that make the company liable for a negligent act to which it was no party, happening between the time when it acquired title and the time when it was in a position to take poosession? Does it make it liable apart from the question of possession? There can be no doubt that the Western Transportation Company was the party operating the road when plaintiff was injured. This company was lawfully in possession as lessee. It was not, in law, the

[Pitts., Cin. and St. Louis Railway Co. v. Fierst.]

agent of the purchaser, and according to the evidence it was not his agent in fact. There was no privity between them whereby one became liable for the torts of the other. This case does not resemble Wellsborough & Tioga Plank-road Company v. Griffin, 7 P. F. Smith 417. The points of difference are vital.

*W. W. Thompson* and *Slagle & Wiley*, for defendants in error. —It is apparent, from the reading of the Act of 1861, that the new corporation does not take its being from the time of organization, but is in existence from the date of the sale, the powers residing in and being exercised by the purchaser in the meantime. This is a necessity of the case. There can be no suspension of such powers. Like a fee, they cannot be in abeyance and must always exist somewhere, and therefore the act provides that " the person or persons for on whose account such railroad may be purchased, shall be and they are hereby constituted a body politic and corporate." Accordingly it was held by this court, in the Wellsburg & Tioga Plank-road Company v. Griffin, *supra*, that after a sale under a similar law, " there remained no further duty for the company to perform," and that the purchaser alone was responsible for any injury occurring after such sale. See also, Commonwealth v. Central Passenger Railway Company, 2 P. F. Smith 506. It follows then that the purchasers would have the power to at once take possession of the property and exercise the rights and powers of the corporation subject to its duties, and that all profits and liabilities would belong to the corporation subsequently organized in accordance with the provisions of the law; and this power being in pursuance of a public grant, it would become a duty upon the parties to exercise it. The existence and operation of the road by the Western Transportation Company would not affect this power and duty. But aside from this as the road was owned by the defendants, who had possession of all the books and papers relating to it, and who could have shown affirmatively and positively who was at the time operating the road, their failure to produce it raised a presumption that, if offered, it would be against them: Frick v. Barbour, 14 P. F. Smith 121 ; Brown v. Shock, 27 Id. 478 ; Bryant v. Stilwell, 12 Harris 317.

Mr. Justice GREEN delivered the opinion of the court, November 22d 1880.

This was an action to recover damages for a personal injury sustained by the plaintiff, whilst engaged as a brakeman in the employ of the National Coal and Coke Company, on their coal cars. In the course of his employment he was required to serve on the train running between the works of the National Coal and Coke Company, situate a few miles west of Pittsburgh, on the line of the Pittsburgh and Steubenville Railroad and Pittsburgh. No ques-

tion was made on the trial as to the negligence which resulted in the injury of the plaintiff, the only question being whether the corporation defendant, in the present action, was liable to pay the damages in any event.  At the time of the plaintiff's injury the defendant had no actual existence as a corporation.  It was created under the general railroad law of this Commonwealth by articles of consolidation and merger, in pursuance of the provisions of the Act of 24th March 1865, Pamph. L. 49.  The several corporations which participated in the consolidation were the Steubenville and Indiana Railroad Company, a corporation of Ohio; the Holliday's Cove Railroad Company, a corporation of West Virginia; and the Pan Handle Railway Company, a corporation of Pennsylvania.  The certificate of organization of the Pittsburgh, Cincinnati and St. Louis Railway Company was dated March 17th 1868, and was filed in the office of the secretary of the Commonwealth on May 29th 1868.  By the third section of the act above referred to, it is provided that upon the making and perfecting the agreement and act of consolidation, and filing the same, or a copy, with the secretary of the Commonwealth, the several corporations, parties thereto, shall be deemed and taken to be one corporation, by the name provided in the said agreement, possessing within this Commonwealth all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of each of such corporations so consolidated.

The 29th of May 1868 therefore would be the date at which the defendant became duly organized as a corporate body.  By a proviso to the fourth section of the act it is declared that "all debts, liabilities and duties of either of said companies, shall thenceforth attach to said new corporation, and be enforced against it, to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."   In the present action it is averred that the liability to pay the damages occasioned by the injury to the plaintiff was a liability of the Pan Handle Railway Company, and therefore under the above quoted proviso to the fourth section of the act, it became the liability of the present defendant, and this is the sole question in this case.   It becomes necessary to consider whether the Pan Handle Railway Company was liable for the injury of the plaintiff.   That company was organized in the following manner: On November 6th 1867 the Pittsburgh and Steubenville railroad was sold at judicial sale under a decree of foreclosure made by this court.   The purchaser at said sale was W. J. Howard, to whom a deed was made on December 7th 1867.   On December 28th 1867 W. J. Howard and those for whom he purchased the Pittsburgh and Steubenville railroad, held a meeting to organize the Pan Handle Railway Company.   On January 14th 1868 articles of association were signed, and on the next day, January 15th 1868, they were filed in the office of the secretary of the Commonwealth.   By the

[Pitts., Cin. and St. Louis Railway Co. v. Fierst.]

second section of the Act of April 8th 1861, under which this organization was had, it is provided that a certified copy of the certificate of organization filed as aforesaid "shall be evidence of the corporate existence of said new corporation." It is plain, therefore, that the Pan Handle Railway Company was a lawfully constituted corporation, vested with all the corporate rights and franchises of the Pittsburgh and Steubenville Railroad Company from and after the 15th day of January 1868. Under the Act of April 8th 1861, it was held, in Wellsborough and Tioga Plankroad Co. v. Griffin, 7 P. F. Smith 417, and in Commonwealth v. Central Passenger Railway, 2 Id. 506, that the corporate franchises of a corporation sold in accordance with the provisions of that act passed to, and became vested in, the purchaser from the time of sale. The purchaser, being authorized to organize a new company, and proceeding to perform that duty according to the requirements of the act, brings into existence a new corporate body which succeeds to the corporate rights and franchises formerly owned by the company whose property has been sold, and held after the sale by the purchaser.

In the case of Wellsborough and Tioga Plankroad Co. v. Griffin, supra, it was held that the old company was not liable for an injury occurring after the sale, but that the purchaser would have been so liable if in point of fact he maintained and conducted the road. In the present case it was proved on the trial, and not contradicted, that the Pittsburgh and Steubenville Railroad was leased to the Western Transportation Company, by a contract dated December 30th 1857, for the term of twenty years, which was supplemented by a new and additional agreement, dated June 3d 1858. The Western Transportation Company was incorporated by the Act of March 15th 1856, Pamph. L. 1857, p. 76, "with power to lease, finish, equip and operate the Steubenville railroad, for such term of years and upon such conditions as may be agreed upon with said railroad company." The lease to the Western Transportation Company included a contract by that company to finish the road and operate it. It was proved by the testimony of W. W. Card, a witness for the defence, and contradicted by no one, that he was superintendent of the Pittsburgh, Columbus and Cincinnati Railroad Company, which was composed of the Western Transportation Company and the old Steubenville and Indiana Railroad Company, and that the Western Transportation Company was in possession of the Pittsburgh and Steubenville portion of the line continuously during the period of his service. His service commenced in 1864 and continued until about October or November 1871. Against this positive proof there was not a particle of testimony. Now the plaintiff received his injury on December 21st 1867. At that time the road was in the actual possession of the Western Transportation Company. The plaintiff's right of action

[Pitts., Cin. and St. Louis Railway Co. *v.* Fierst.]

accrued on the day he was injured. On that day there was no such corporation in existence as the Pittsburgh, Cincinnati and St. Louis Railway Company. No action of any kind could have been brought against that company at that time, and we cannot understand how any legal presumption could arise that the road was in the possession of that company at that time. We can understand how a presumption would arise that the road was then in the possession of W. J. Howard, because he was the purshaser at the judicial sale of the road on November 6th 1867. But even that presumption would be clearly rebutted by the positive and uncontradicted proof that in point of fact the road was then in possession of the Western Transportation Company. In this state of the testimony we think the learned judge of the court below was in error in refusing to affirm the defendant's point that under all the evidence in the case the verdict must be for the defendant; and also in saying that there was a presumption that the road was in the possession of the Pan Handle Company at the time of the accident. We are also of the opinion that the court was in error in submitting as a question of fact whether the Pan Handle Company was in possession at the time of the injury, when there was no evidence to that effect.

Judgment reversed, and a *venire facias de novo* awarded.