# Parks v. Penna. Clay Co., Appellant, (No. 1).

*Ejectment—Mesne profits—Notice of claim—Res adjudicata.*

Mesne profits may be claimed in an action of ejectment to the time of trial without any formal averment of a trespass and a continuance of such trespass; but notice must be given within a reasonable time that such profits will be claimed.

An averment by the plaintiff in his statement that he has brought suit for "the recovery of possession of said premises from which he has been so unlawfully dispossessed and ejected, and for the damages by him sustained," is a sufficient notice to the defendant that damages for mesne profits would be claimed to the day of trial; but the mere allegation of such a claim does not estop sub-

sequent proceedings for the claim supposed to be involved in such statement, if a doubtful record exists and it can be shown by evidence extrinsic to the record that such claim was not as a fact adjudicated.

In an action for mesne profits the verdict and judgment in ejectment are conclusive of the right to recover only from the time the action was commenced up to the time possession of the property was regained. If the plaintiffs claim beyond the date of the commencement of the action in ejectment, they must prove their title and right of possession.

Argued May 12, 1915. Appeal, No. 125, April T., 1915, by defendant, from judgment of C. P. Beaver Co., March T., 1909, No. 173, on verdict for plaintiff in case of Mary D. Parks, Administratrix of the Estate of James I. Parks, deceased, v. Pennsylvania Clay Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass for mesne profits. Before HOLT, P. J.

At the trial it appeared that James I. Parks owned and operated certain brick plants in Crow's Run Valley. Some years prior to 1905 Parks and his sons organized a corporation entitled the Pennsylvania Clay Company which took over the business and land, except a small triangular piece as to which James I. Parks retained title. This corporation became involved and passed into the hands of a receiver. On July 22, 1905, the business and land was sold to one Chaplin who organized a new company also known as the Pennsylvania Clay Company on January 27, 1906. On April 27, 1906, plaintiff brought a suit in ejectment for the small triangular piece which had been occupied in part by one of the company's kilns. A verdict was rendered for the plaintiff in this suit on November 30, 1907. The present suit was begun January 5, 1915, for mesne profits claimed to have accrued from July 22, 1905. The possession of the property was given up by the defendant to the plaintiff on March 13, 1909, when defendant recognized plaintiff's

title by taking a lease from him for the land in question.

When W. A. Parks was on the stand he was asked this question:

"Q. Coming down to January 22, 1905,—July 22, I believe is the date, 1905, you may say what was on this piece of land?"

A. At that date there was—

Counsel for the defendant object to anything prior to the date of the verdict in the ejectment suit which was just offered; for the reason that in their declaration in this suit they claim damages, and the verdict would therefore—

The Court: Was there a claim of damages for mesne profits?

By Mr. Moorehead: I will read it to your honor, so that the matter will be settled now.

Mr. Moorehead reads the document in question to the court.

By the Court: I think Mr. Moorehead, a notice has to be given in an ejectment proceeding that on the trial the damages for mesne profits will be claimed. We will overrule the objection for the present, admit the evidence, grant an exception and seal a bill, and will hear you later by way of a request for binding instructions.

The last above question read to the witness.

A. There was—

Counsel for the defendant objects further, because this company was not reorganized until considerably later, and any proofs previous to the reorganization are inadmissible.

By the Court: The objection is overruled.

By the witness: There was a frame building on the property, and two brick kilns and about—

Counsel for the defendant renews his objection to testimony of anything prior to the date of the reorganization of this company. This witness may know that something was done there, but he can't know that the

defendant company did it, because this company did not exist.

By the Court: We will take the testimony under objection, exception and bill, and hear you later on a motion to have the jury disregard the evidence.

Defendant presented this point:

4. That in the suit in ejectment at No. 175, June Term, 1906, the record of which has been offered in evidence, the plaintiff claimed damages, and this precludes him from now claiming damages or mesne profits prior to the date of the verdict in that case, which was November 13, 1907, so that the period for which damages or mesne profits may be computed is from November 13, 1907, to the date of the making of a lease, to-wit, February 17, 1909, or a period of one year three months and four days?

Answer. Refused and not read to the jury.    (3)

The court charged in part as follows:

["But, on the other hand, if there was a mere cessation of user of the two kilns resting upon part of the premises, that cessation of user would not relieve for mesne profits; for one would have not only to cease to use the kiln, but actually and openly remove from the ground."]    (1)

Verdict and judgment for plaintiff for $574.85.    Defendant appealed.

*Errors assigned* were above rulings and instructions.

*F. G. Moorehead,* with him *John G. Marshall,* for appellant, cited: Parks v. Pennsylvania Clay Co., 222 Pa. 571.

*Clyde Holt,* with him *James L. Hogan,* for appellee, cited: Com. v. Central Pass. R. R. Co., 52 Pa. 506; Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Fierst, 96 Pa. 144.

OPINION BY KEPHART, J., July 21, 1915:

Mesne profits may be claimed in an action of ejectment without any formal averment of a trespass and a continuance of such trespass: Dawson v. McGill, 4 Wharton 229; Boyd v. Cowan, 4 Dallas 138. The legal effect of the action of ejectment when mesne profits are claimed is, that the plaintiff was in possession of the land in dispute, was ousted by the defendant, and continued to be ousted to the day of trial, evidencing continued trespass for which, so far as mesne profits are concerned, the jury may award damages to the day of trial: Dawson v. McGill, supra; Boyd v. Cowan, supra. In Dawson v. McGill, supra, mesne profits to the day of trial were recovered without any formal notice to the defendant. The only intimation received by the defendant that damages would be claimed was through a conversation at bar during the course of trial. It was later held that notice must be given in time sufficient to prepare a defense: Cook v. Nicholas, 2. W. & S. 27. The plaintiff may make this claim in his declaration in ejectment or he may proceed under the Act of May 2, 1876, P. L. 95, giving notice, before trial, of his intention to so claim. "In our statutory action of ejectment, mesne profits may be recovered by giving notice of the claim when suit is brought, or afterwards, within a reasonable time:" Carman v. Beam, 88 Pa. 319, now regulated by the Act of May 2, 1876, P. L. 95.

The plaintiff in the action of ejectment, on which the present action is partly based, brought suit for "the recovery of the possession of said premises from which he has been so unlawfully dispossessed and ejected and for the damages by him sustained." Under the authorities cited, this statement would be a sufficient notice to the defendant that damages for mesne profits would be claimed to the day of trial. Defendant, in the ejectment, could not have successfully resisted the introduction of evidence in support of such claim. By so declaring and going to trial, the judgment which followed the

trial, prima facie, at least, adjudicated a part of the claim now before us. When the plaintiff, to establish her case, offered in evidence the record of the ejectment, she was confronted with a condition which showed a part of her claim to have been adjudicated. It was her duty to explain this record, by competent evidence, if it needed and was susceptible of explanation. If there was anything in the record which made it uncertain as to the conclusiveness of this judgment, it was competent for evidence to be submitted explanatory of the doubtful condition of the record. The mere allegation of a claim in the plaintiff's declaration does not estop subsequent proceedings for the claim supposed to be involved in such declaration, if a doubtful record exists and it can be shown by evidence extrinsic to the record that such claim was not as a fact adjudicated: Kille v. Ege, 82 Pa. 102; Hartman v. Pittsburgh Inclined Plane Co., 23 Pa. Superior Ct. 360. "Where the record leaves the matter in doubt and explanatory evidence has been given, the question of the conclusiveness in his favor of a former verdict and judgment for the plaintiff as to a matter directly involved in the second suit is to be determined, not by a mere inspection of the declaration filed in the former suit, but by the extrinsic evidence as to the claim submitted to and determined by the jury:" Hartman v. Inclined Plane Co., supra. The declaration in ejectment is clear enough, but there may be some questions as to the effect of the verdict taken in connection with this record. As the matter stands, it is prima facie against the appellant if it is not conclusive. That the defendant may plead the recovery of damages for mesne profits in the action of ejectment, or the conclusiveness of the record in ejectment, in a subsequent action for mesne profits, cannot be questioned: Boyd v. Cowan, supra.

In an action for mesne profits, the verdict and judgment in ejectment are conclusive of the right to recover only from the time the action was commenced, up to

the time possession of the property was regained: Kille v. Ege, supra. If they claim beyond the date of the commencement of the action of ejectment, they must prove their title and right of possession. The idea entertained by the trial court that in the action of ejectment this title, prior to the issuance of the writ, was controverted and sustained by the verdict in the ejectment, is not, under the authorities, correct. As stated by Mr. Justice Mercur, in Kille v. Ege, supra, "Every fact and conclusion found in the first suit might be controverted in the second. Hence when, in this action, the defendants in error claimed for mesne profits prior to bringing their suit in ejectment, they opened the question of their title and of the possession of the opposite party for such prior time, as fully as it would have been by a second action of ejectment. Neither the prior judgment in ejectment nor any of the proceedings therein estopped the plaintiffs in error from having their rights again passed upon, nor from having the same evidence considered by another jury."

The objection to the evidence prior to the date of reorganization should have been sustained. There was no connection shown between Chaplin and all of those who organized the new company. The organizers did not appear in the matter until the formal meeting, at which the new company was formed, was held. It appears that Chaplin bought the property for the Colonial Trust Company. It is not a part of the reorganized or new company. The evidence as to what was done after the receiver's sale, to fix liability on the new company, was not sufficient. The possession necessary under the law was not shown. No specific act connecting those who formed the new company with the prosecution of any business, appears in the evidence. Under the Act of April 8, 1861, it has been held that "the purchaser being authorized to organize a new company, and proceeding to perform that duty according to the requirements of the act, brings into existence a new corporate

body which succeeds to the corporate rights and franchises formerly owned by the company whose property has been sold, and held after the sale by the purchaser:" Pitts., Etc., Railroad Co. v. Fierst, 96 Pa. 144. The new Pennsylvania company did not come into existence as such until it had complied with this act. If, as a fact, all the reorganizers had been interested in the purchase and had continued the operation of the company, a different question might arise. As stated in Pitts., Etc., Railroad Co. v. Fierst, supra, the franchises would be presumed to be in the purchaser or those whom he represented, and in the case at bar would be in Chaplin or the Colonial Trust Company, or both. They would not be in a company not yet organized, having no legal existence until the certificate evidencing organization under the act had been filed as provided in the act. As to just what sort of a legal entity the purchasers might assume under the facts of this case and the Act of 1861, as to the question of liability for a continuance of the operation of the old company and its franchises, need not here be decided. The second assignment of error, though to some extent imperfectly drawn, and the third assignment of error are sustained.

The trial court committed no error in the disposition of the question of rental value for the entire tract when the defendant claimed only a part of it had been used. The testimony was contradictory and for the jury. The first assignment of error is overruled.

The judgment is reversed and a venire facias de novo is awarded.